IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff

v.

[66] CARLOS VELAZQUEZ-FONTANEZ
Defendant

Criminal No. 15-462 (JAG)

**PETITION FOR RELIEF UNDER 28 U.S.C. §2255**

**TO THE HONORABLE COURT:**

**COMES NOW** the above captioned Defendant, Carlos Velazquez-Fontanez, (hereinafter "Petitioner" or "Velazquez-Fontanez") through the undersigned attorney, who most respectfully states, alleges and prays:

**I. Introduction**

1. On July 17, 2015, Petitioner, Carlos Velazquez-Fontanez, was the subject of a Nine Count Indictment (d.e. 3) issued by a District of Puerto Rico Grand Jury. Petitioner was charged in Counts One, Two Three, Four, and Five of the Indictment:

    **Count One:** Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d);
    **Count Two:** Conspiracy to Possess with Intent to Distribute a Controlled Substance Within a Protected Location, 21 U.S.C. §§ 846 and 860;
    **Count Three:** Using and Carrying Firearms During and in Relation to a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A);
    **Count Four:** Drive By Shooting, 18 U.S.C. § 36(b)(2)(A); and
    **Count Five:** Using and Carrying Firearms During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c)(1)(A).

2. On July 22, 2015, attorney Victor M. Chico-Luna was appointed under the Criminal Justice Act (CJA) to represent Petitioner Velazquez-Fontanez.

3. After a seventeen (17) day trial, Velazquez-Fontanez was found guilty of all five charges

against him and sentenced to 480 months in prison on February 13, 2018 (d.e. 3478).

4. Following the entry of judgment, an appeal was filed on February 16, 2018 (d.e. 3479). While on appeal, a co-defendant successfully obtained relief on a post-conviction matter of application to Velazquez-Fontanez's case (d.e. 3592), which resulted in the case being remanded to the District Court before a disposition of the appeal.

5. After a stay of appeal was requested to the Circuit Court (d.e. 3681), Petitioner's judgment was amended by the District Court on December 7, 2018, dismissing count three and amending the judgment to a sentence of 300 months in prison (d.e. 3886).

6. On December 11, 2018, a subsequent Notice of Appeal was filed, reinstating the stayed appeal, and challenging the District Court's amended judgment. (d.e. 3893)

7. On September 23, 2019, Petitioner's Court of Appeals appointed counsel, attorney Maria Soledad Ramirez-Becerra, filed a "Motion To Preserve Issue On Appeal". (d.e. 4008)

8. On October 9, 2019, Petitioner filed a Brief on Appeal before the US Court of Appeals for the First Circuit (Brief on Appeal, USCA Case 19-1010, document 00117500170), bringing forward four issues on appeal:

   a. The District Court committed error by denying Velazquez-Fontanez's motion for acquittal as there was insufficient evidence to sustain the jury verdict.

   b. The Court of Appeals should dismiss the conviction for Count V as the same is unconstitutional under the Supreme Court case of United States v. Davis, 139 S. Ct. 2319 (2019).

   c. The District Court erred ion the additional instructions given to the jury during the deliberations regarding the alibi defense, the definition of conspiracy and the transcripts of the testimonial evidence requested by the jury.

      d.   This Court should dismiss the indictment for lack of jurisdiction.

9.     On July 27, 2021, the US Circuit Court of Appeals affirmed Velazquez-Fontanez's conviction (d.e. 4350). He sought review of the Circuit Court's judgment at the US Supreme Court, via Petition for Writ of Certiorari, which was ultimately denied on November 15, 2021.

10.    On October 11, 2022, the Court appointed the undersigned to assist Velazquez-Fontanez in filing a "Reply to Motion for Compassionate Release". (d.e. 4570). For which, on October 28, 2022, the undersigned counsel requested clarification as to the scope of the appointment. (d.e. 4571).

11.    On October 31, 2022, the Court expressed that appointed counsel shall assist Defendant with the filing of a reply to the motion for reconsideration by December 15, 2022. It also clarified that the appointment extends to reviewing the record of this case and filing any applicable petition for relief under 28 U.S.C. §2255 by January 9, 2023. (d.e. 4572).

12.    Most recently, Counsel requested from the Court an extension of time until March 10, 2023, to file a Petition for Relief under §2255, (d.e. 4586), which was ultimately granted on January 9, 2023. (d.e. 4587).

13.    Petitioner contends that two instances occurred during the trial that amounted to the denial of his Sixth Amendment constitutional right to effective assistance of counsel. Particularly, trial counsel's inability to timely object determinations that would later be unsuccessfully challenged on appeal due to being waived. In addition, he contends that the Court's denial of his request to appoint new counsel prior to the commencement of trial lacerated his Sixth Amendment rights to effective assistance of counsel.

## II. Applicable Law

14.    Title 28 U.S.C. §2255 allows a federal prisoner to move to vacate, set aside, or correct a

sentence based on one of the following events:

    a. the sentence was imposed in violation of the Constitution or laws of the United States.

    b. the court lacked jurisdiction to impose the sentence.

    c. the sentence was in excess of the maximum authorized by law or,

    d. the sentence was otherwise subject to collateral attack.

15. It is well settled that a section 2255 motion is not a substitute for an appeal. A defendant must first raise his claims on direct appeal before bringing the claim in a section 2255 motion. United States v. Essig, 10 F.3d 968 (3rd Cir 1993). If a defendant fails to preserve the claim on direct appeal, a court may not consider the claim in a subsequent section 2255 motion, unless the defendant can establish "cause and prejudice," United States v. Frady, 456 U.S. 152, 167, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); or a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 496 (1986). The exception to the exhaustion principle is ineffective assistance of counsel, which may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

16. In the present case, Velazquez-Fontanez preserved his claims on direct appeal through his appointed appellate counsel, raising issues related to jury instructions for which jurors had requested clarification. The trial transcript reflects that during these conversations Petitioner's counsel assistance fell below an objective standard of reasonableness when he failed to timely object and fervently argue the proposed jury instructions in his client's best legal interest.

17. The standard for an ineffective assistance of counsel claim is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon

as having produced a just result. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lema v. United States, 987 F.2d 48 (1st Cir. 1993). In order to succeed in a claim of ineffective assistance of counsel Petitioner must show both incompetence and prejudice: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996); Darden v. Wainwright, 477 U.S. 168 (1986); Lockhart v. Fretwell, 506 U.S. 364 (1993).

18. Petitioner bears a "very heavy burden" in the attempt to have his sentence vacated premised on ineffectiveness of counsel. Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). The Strickland standard provided that "only where, given facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), citing Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

19. To successfully meet the first prong of the Strickland test, petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Tejada v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland at 689). A court must review counsel's actions deferentially and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (quoting Strickland, 466 U.S. at 689).

20. The second prong of the Strickland test, the element of prejudice, also sets the bar high.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Argencourt v. United States, 78 F.3d at 16 (quoting Strickland, 466 U.S. at 691). Petitioner must "prove that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) (citing Strickland, 466 U.S. at 687). This means that if petitioner is successful in showing deficiencies in his counsel's representation, he must then conclusively establish that those deficiencies led to a real prejudice against him in the criminal proceeding. Id. at 694.

### III. Argument

**i. Defense counsel representation fell below an objective standard of reasonableness when he failed to object the Court's decision allowing for supplementary jury instructions as to alibi in conjunction with aid and abet instructions, ultimately resulting in a conviction as to Count Four.**

21. The trial transcript reflects that during day seventeen of the trial, the jury demanded clarification as to Instruction Number 44, an alibi instruction which read: "One of the issues in this case is whether Defendant Carlos Velazquez-Fontanez was present at the time and place of the alleged crime. If, after considering all the evidence, you have a reasonable doubt that Mr. Velazquez-Fontanez was present, then you must find Mr. Velazquez-Fontanez not guilty." (d.e. 3860: Tr. Trial Day 17, p. 11 [lines 14-20]). Faced with this instruction, the jurors sent a note requesting clarification: "Honorable Judge Jay Garcia-Gregory, we, the jurors, request further clarification on Instruction Number 44 regarding the meaning of being present." (d.e. 3860: Tr. Trial Day 17, p. 9 [lines 15-17]).

22. During the exchanges that ensued between the Court and counsels, counsel for the United States argued the instruction was incorrect and highly confusing as it was not necessary for them

to prove Velazquez-Fontanez was physically present at the time of the crime. For this, they suggested a supplementary instruction be given stating: "Presence does not require actual physical presence. Please refer to instruction on aiding and abetting in regards to that" (d.e. 3860: Tr. Trial day 17, p. 12 [lines 15-17]). In its place, Petitioner's counsel argued that the instruction be kept as it was, because it is "illogical that presence does not require physical presence." (d.e. 3860: Tr. Trial day 17, p. 13 [lines 4-6]). Over Defense counsel's request, the Court decided to instruct the jury to read Instruction Number 44 in conjunction with Instruction Number 34 (aid and abet) in light of all the evidence presented in the case. (d.e. 3860: Tr. Trial day 17, p. 13 [lines 14-17]). Defense counsel failed to object to the Court's final response to the jury's note.

23. When the issue was presented on appeal, Petitioner argued that the District Court erred in allowing an additional jury instruction as to alibi defense over defendant's objection. Particularly, "[t]he Court's instruction confused the jury because it suggested that Velazquez-Fontanez could be found guilty for identifying the victim by phone regardless of his presence. However, the sentencing Court forgot to reinforce the jury's obligation to find Velazquez-Fontanez's knowing and intentional involvement in the plan with others to murder Prieto Pincho and other 3 individuals which is an essential element for the offense." (Brief on Appeal, USCA Case 19-1010, document 00117500170, p. 60)

24. The arguments presented on appeal suggest that with reasonable probability, had the Court offered the clarification requested by the jurors, Petitioner's trial outcome would have been favorable as to count four.

> "The evidence presented by the government did not support the inference that Velazquez-Fontanez was present, an essential requirement for the alibi instruction. Moreover, and as discussed in Argument A (4), the evidence presented at trial did not support a finding that Velazquez-Fontanez purposely intended to cooperate with the co-defendants in the drive by shooting and was aware of the plan to murder

7

Prieto Pincho and 3 other individuals. The jury note to have the meaning of being present clarified indicated the high probability of the juror's reliance on Velazquez-Fontanez's alibi theory. Therefore, the District Court's decision to instruct the jury to consider the alibi instruction in connection with the aiding and abetting instruction played a role in the jury's deliberations because Velazquez-Fontanez was found guilty notwithstanding there was no evidence that he was present and failed to prove that he knowingly and intentionally planned the murder with the other defendants or persons. Because the government's theory was not amply supported by the record, and the alibi instruction would have led a reasonable jury to not find guilt, the District Judge's instruction to treat the alibi and the aiding and abetting instruction together definitely left the jury confused or poorly enlightened about what the essential elements of the crime were. *See,* United States v. Zanghi, 189 F.3d 71, fn. 11 (1st Cir. 1999). Therefore, the District Court erred in giving said instruction."

(Brief on Appeal, USCA Case 19-1010, document 00117500170, p.s. 61-62)

25. However, due to defense counsel's failure to raise a timely objection - instead waving it stating "[n]o objection, Your Honor." (d.e. 3860: Tr. Trial day 17, p. 13 [line 19]) - the Court of Appeals declined to consider his argument, which ultimately resulted prejudicial to Petitioner. In its judgment, the Court of Appeals states:

> "Velazquez-Fontanez argues on appeal that this supplementary jury instruction was improper. But this challenge goes nowhere. Velazquez-Fontanez waived his objection when he affirmatively stated that he had "[n]o objection" to the district court's proposed response, which aligned with Velazquez-Fontanez's request that the district court refer the jury to the existing instructions."

(d.e. 4350, US Court of Appeals Judgment, p. 47).[1]

26. Counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[1] The Court of Appeals cites two different Circuit cases in which, as in Petitioner's case, counsels waived their objections to inadequate jury instructions and were ultimately unsuccessful challenging them on appeal. See United States v. Corbett, 870 F.3d 21, 30–31 (1st Cir. 2017) (holding that challenge to response to juror note was waived where defendant said that proposed response "restates the instruction already given, so I have no problem"); United States v. Acevedo, 882 F.3d 251, 264 (1st Cir. 2018) (holding that challenge to revised jury instruction was waived where defendant stated he had no objection and changes were made in light of defendant's concerns).

would have been different, satisfying the two-prong Strickland test. Had Defense counsel objected accordingly, the issue would have been successfully preserved for appeal and favorably considered, ultimately resulting in a different outcome for the proceedings as to Count Four, since the government's theory was not amply supported by the record, and the alibi instruction would have led a reasonable jury to not find guilt.

> **ii. Defense counsel representation fell below an objective standard of reasonableness when he failed to object the Court's response to the jurors which lacked clarification as to the meaning of conspiracy, eventually resulting in a conviction as to count two.**

27. The trial transcript reflects that during day seventeen of the trial, the jury requested clarification as to what conspiracy meant in Count Two and whether aiding and abetting also applied to counts Two, Four and Five. (d.e. 3860: Tr. Trial day 17, p. 6 [lines 13-16]). The Court suggested as a possible response to the jurors note to refer them to Instruction Number 32, regarding Conspiracy to Possess with Intent to Distribute, and clarifying that aiding and abetting does not apply to count two, but does apply to count four and five. (d.e. 3860: Tr. Trial day 17, p. 6 [lines 17-21]).

28. Counsel for another co-defendant suggested the Court inquire the jurors further as to what exactly was their question, which the Court ultimately did not do. (d.e. 3860: Tr. Trial day 17, p.s. 8 [lines 3-25]). On appeal, Velazquez-Fontanez's appellate counsel brought up said issue, arguing that:

> "[h]ere, the District Court abused its discretion because it failed to answer the jury's question appropriately. Instead the District Court decided to refer the jury to the Instruction Number 32 without clarifying the meaning of conspiracy requested. Considering this case's circumstances where no evidence was presented to show that Velazquez-Fontanez sold drugs for the Rompe ONU's conspiracy, the jury's question as to the meaning of conspiracy required clarification from the District Judge. In failing to clarify to the jury what conspiracy meant, the District Court abused its discretion. Without said clarification the jury erroneously inferred that

Velazquez-Fontanez conspired with the other defendants to sell drugs for la Rompe ONU and was found guilty of conspiracy for count (2)."

(Brief on Appeal, USCA Case 19-1010, document 00117500170, p.s. 62-63).

29. In its judgment, the Court of Appeals expressed:

"The defendants did not object to or seek to modify the district court's initial conspiracy instruction. Nor did they suggest an alternative instruction that the district court should have provided in response to the note. Even where a defendant does offer an alternative, we typically do not fault a district court for declining to expand upon its "initial, entirely correct instructions" and instead "refer[ring] the jury to the original formulation." United States v. Roberson, 459 F.3d 39, 46 (1st Cir. 2006) (quoting Elliott v. S.D. Warren Co., 134 F.3d 1, 7 (1st Cir. 1998)). Defendants have not shown that the district court abused its discretion by sticking to the instruction given here without objection."

(US Court of Appeals Judgment, p. 46, d.e. 4350).

30. Once again, due to defense counsel's inadequate representation below the objective standard of reasonableness, Petitioner was adversely affected by the waiving of the objection that would later be brought up on appeal, resulting in a conviction as to count two and the inability to challenge this determination. With reasonable probability, but for counsel's unprofessional errors, the result of the proceeding on trial and appellate levels would have been different and most favorable to Petitioner.

> iii. **Petitioner was denied his right to effective assistance of counsel under the Sixth Amendment when the Court denied his various pro-se motions requesting a new appointment of counsel.**

31. From the outset, Velazquez-Fontanez formally advised the Court via numerous pro-se motions that he was not content with Chico-Luna's legal assistance. Velazquez-Fontanez refers the Court to precise instances on the record [d.e. #278, 279, 280, 281, 282, 283, 284, 286, 287] whereby he formally presented the Court with former counsel's blatant refusal to protect his client's best legal interests, which is worth noting. Petitioner advances that he was denied his Sixth

Amendment right to effective assistance of counsel when the Court failed to entertain and grant his formal request for different counsel of record due to counsel's actions and inactions.

32. Velazquez-Fontanez argues that his former defense counsel denied him his Sixth Amendment right to effective assistance of counsel when he failed to challenge whether sufficient evidence existed to prove without a reasonable doubt that he possessed the requisite intent to use, carry, or cause to know that another would discharge a firearm during an alleged crime of violence; failed to challenge and pursue an interlocutory appeal challenging the denial of the trial court for a specific jury verdict; and failed to request a liability theory for aiding & abetting instructions under United States v. Rosemond, 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014).

**WHEREFORE**, Petitioner contends that this Honorable Court in the present habeas proceedings should grant the present motion, vacate the judgment, and remand to the District Court for further proceedings.

In San Juan, Puerto Rico, on March 10, 2023.

**I HEREBY CERTIFY**: That I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the United States Attorney, and all other attorneys of record of all the parties in the above-captioned case.

/s/Fernando O. Zambrana-Aviles
Fernando O. Zambrana Avilés, Esq.
Colon Serrano Zambrana, LLC
USDC-PR No. 227012
Email: fernando@cszlawpr.com
PO Box 360610
San Juan, PR 00936-0610 787-919-0026